## CIRCUIT COURT OF WISE COUNTY

Robert Kevin Fleming

v.

Apple Coal Company

June 30, 1999

Case No. L94-28

By Judge J. Robert Stump

The court has carefully considered the above file, pleadings, facts presented through depositions and documents in relation to defendant's plea of workers' compensation bar, oral arguments, counsel's written briefs, counsel's submission of findings of fact and conclusions of law. Wherefore, the court makes the following findings of fact and conclusions of law.

On December 7, 1992, an explosion at Southmountain Coal Company, Inc., No. 3 Mine in Wise County, killed eight coal miners (six are separate plaintiffs herein L94-381; -382; - 383; -384; -385; -386) and seriously injured plaintiff Fleming.

Defendant, Apple Coal Company, was the parent company of its wholly-owned subsidiary, Southmountain. Southmountain paid, and continues to pay, workers' compensation benefits for plaintiffs. Apple's employees negotiated for and obtained these benefits for Southmountain.

Plaintiffs contend the Virginia Workers' Compensation Act does not bar the employees of a wholly-owned subsidiary from bringing suit against the parent corporation. Plaintiffs claim that they were employees of Southmountain and at the time of the explosion were providing services in underground mining and were not part of the trade, business, or occupation of Apple, whose employees did not mine coal but only conducted administrative or supervisory tasks. Plaintiffs rely primarily on the case of *Shell Oil Co v. Leftwich*, 212 Va. 715, 187 S.E.2d 162 (1972).

Defendant contends that Apple and Southmountain occupy the same trade or business; that they are both organized to extract and sell coal; that Apple operates through its wholly-owned subsidiaries, which it has entirely integrated into its administrative structure and supervises from low level employee hiring through the actual sale of coal; and that plaintiff's exclusive remedy is workers' compensation benefits since Apple is a statutory employer of plaintiffs, in the same trade or business as Southmountain, and is not an "other party," nor "stranger to the business." Defendant relies primarily on *Rasnick v. Pittston Co.*, 237 Va. 658, 379 S.E.2d 353 (1989).

The court opines that the *Shell Oil* case is not applicable because it is distinguishable on the facts, involved an independent contractor, and was not a parent corporation-subsidiary relationship. *Rasnick* is applicable here on the facts and is dispositive of the identical issues.

The court further finds that plaintiffs have presented inconsistent positions in their amended motion for judgment allegations as to the workers' compensation issue. Plaintiffs allege Apple and Southmountain are "strangers to the business" and not in the same trade or business. But they allege in their pleadings that Apple undertook supervisory duties at Southmountain and owed a duty to maintain the premises in a safe manner, to inspect for latent defects, and to warn them of and failed to correct a hazardous situation.

The court has read the evidence by depositions, reviewed the documents and exhibits, and adopts the "Findings of Fact" set forth by defendant as follows:

1. Apple Coal Company is both by definition and by activities a coal mining operation. The purpose stated in Apple Coal Company's Charter is "to carry on the business of manufacturing, producing, preparing, buying, selling, trading, mining, and otherwise dealing in and with natural resources, industrial wholesale of products, industrial retail of products, services, and all other articles, materials, and supplies necessary, useful, or convenient in carrying on the businesses of the corporation or incident thereto, etc." The stated purpose of Southmountain Coal Company, Inc., is "to engage in the mining, extraction, processing, and transportation of coal, oil, gas, or other minerals." Apple is not identical to Southmountain. However, Southmountain's purpose is contained within the mining of natural resources portion of Apple's Charter.

2. Southmountain Coal Company sold coal to VIC pursuant to a contract negotiated by W. Jack Davis. (Davis, p. 7.) Southmountain used continuous miners, shuttle cars, bolting machines, power

centers, belt structures, belt takeup motors and outside power centers, and front-end loaders to mine coal pursuant to its contract with VIC. Robert Wayne Kyle, an employee of Apple, was also the Vice President and Treasurer of Southmountain. (Kyle Dep. p. 18.) Apple Coal determined what equipment its subsidiaries (the Apple Coal Affiliates) would need to mine coal. (Collins Dep. p. 7.) It employed Bobby Collins to report to and work at Fairbanks Deep Mine on a regular basis. (Collins Dep. p. 10.) Mr. Collins went underground on a regular basis in a supervisory capacity. (Kyle Dep. p. 18.) He "took care of everything for the day-to-day operations." He also took care of engineering problems or anything underground. (Collins Dep. p. 5.) Apple controlled the number of shifts and the number of workers at its affiliates (Collins Dep. p. 7) and hired and fired every level of employee. (Kyle Dep. p. 35.) Apple Coal and affiliates consisted of Apple Coal Company and its wholly-owned coal mining subsidiaries, Plowboy, Fairbanks, Deep Mine No. 3, Pathfinder Coal Company, No. 8 Limited of Virginia Coal Company, DKD Contractors, and Red Flame Coal Company. These formed an integrated coal mining operation under the direction and control of Apple Coal Company, which both directed and controlled the operations at those sites. Wesley Burke, an Apple employee, visited the coal mine periodically. He dealt with superintendents every day regarding problems with coal supplies, coal quality, and coal contracts. (Burke Dep. p. 5.) Apple Coal Company both directly, in the activities of its supervisory personnel who appeared on site on a daily basis at subsidiary coal mines, such as Robert Kyle and Bobby Collins, and through the activities of its wholly-owned subsidiaries which were integrated into the activities of Apple Coal Company, created an entity in the same trade or business as Southmountain Coal.

3. Apple Coal had daily operation and control of its wholly-owned subsidiary coal mines, which were separate and independent of Southmountain. Apple Coal employees were obviously upper level miners, but nonetheless miners. If Apple Coal employees were removed from coal mines, there would be no employee supervision, no schedule of the number of shifts to be worked, no one would be scheduled to work, no one would be scheduled to perform certain jobs and tasks, no one would deal with everyday problems that arose on certain shifts, and no one would supervise the use of the mining equipment. The mine would shut down without Apple employees' efforts.

4. Apple employees are integrated in the daily coal mining operations. If a distinction is adopted, that to be in the same trade or business, employees of parent corporations and their wholly-owned subsidiaries have to perform exactly the same function, the distinction would be impracticable since few companies exactly duplicate the structure of another company.

The court further found plaintiffs' expert, Mark Coles, to be unreliable, unbelievable, and lacking credibility on the issues.

Both Apple and Southmountain are coal mining operations, organized to extract and sell coal. Apple is the administrator/supervisor, and Southmountain is the coal miner/worker. The relationship between the two companies is similar to employer/employee, boss/servant, Army general/private, parent/child, Chief/Indian, brain/arms and legs, etc. Their physical duties were not exactly the same but overlapped. The bottom line is that the two corporations were in the same business of mining and selling coal for the mutual benefit of both. One company could not function nor complete its ultimate goals without the other. They relied on each other. They were integrated, interchangeable, interconnected, and interrelated. They needed one another. It was like a marriage of corporations formed to produce and sell coal for profit.

Apple was not a "stranger to the business," nor "any other party," of Southmountain. Apple was the "statutory employer" of Southmountain. Virginia Code § 65.2-302. Apple and Southmountain undertook to perform the same trade, business, or occupation, i.e., extracting and selling coal. The exclusive remedy for Fleming and the six other decedent coal miners is pursuant to the Workers' Compensation Act. Defendant's pleas are sustained as to all plaintiffs, and these common law negligence actions are dismissed.